IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01155-JLK

THE WESTERN STATE BANK,

      Plaintiff,

v.

COSEY, L.L.C. d/b/a WOLLERT AUTOMOTIVE,
KENT RAY WOLLERT, and
CHERYL ANN WOLLERT,

      Defendants.

---

**OPINION AND ORDER ON DEFENDANT CHERYL ANN WOLLERT'S
MOTION TO DISMISS (ECF NO. 8)**

---

Kane, J.

This matter is before me on Defendant Cheryl Ann Wollert's ("Ms. Wollert") Motion to Dismiss (ECF No. 8). Ms. Wollert argues that her Motion should be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) because (1) Plaintiff the Western State Bank ("Western State") has failed to adequately plead its claims for fraud and civil theft with respect to Ms. Wollert, and (2) Western State's fraud claim is barred by the economic loss rule.

Western State has not adequately pleaded its fraud claim against Ms. Wollert under Federal Rule of Civil Procedure 9(b). And it has not satisfied the requirements of Rule 8(a) with respect to its civil theft claim, as it has failed to plead one of the elements of that claim. Consequently, I grant Ms. Wollert's Motion.

I. Background

Plaintiff Western State and Defendants Cosey, L.L.C. d/b/a Wollert Automotive ("Cosey"), Kent Ray Wollert ("Mr. Wollert") and Ms. Wollert (collectively "Borrowers") entered into a banking relationship beginning in 2001. Compl. ¶ 11, ECF No. 1. During their relationship, Western State made a series of loans to Borrowers to finance Cosey's operations as a car dealership. *Id.* at ¶¶ 11-13. The financing was given and continued based upon representations and certifications provided to Western State by Borrowers concerning the value of the collateral securing the loans. *Id.* at ¶¶ 12-13. Western State alleges that throughout the relationship, Borrowers misrepresented the value of the collateral securing the loans, leading Western State to believe that this "Borrowing Base" was sufficient to finance Borrowers and to fully secure the loans. *Id.* at ¶ 13. In reality, according to Western State, the Borrowing Base was far less than represented, leaving it significantly under-secured. *Id.*

The banking relationship between Western State and Borrowers culminated in two October 2018 loans in the principal amounts of $1,500,000 and $150,000. The loans were issued to finance Cosey's acquisition of automobiles and provide general operating capital for Cosey. *Id.* at ¶¶ 14-17. Borrowers made and delivered promissory notes for the respective amounts on October 30, 2018. *Id.* at ¶ 14-15. A June 14, 2017 Security Agreement, signed by Borrowers in favor of Western State, sets forth the collateral securing the promissory notes. *Id.* at ¶ 16.

Western State alleges that "in a prolonged pattern of representations to Western State concerning the Borrowing Base, Borrowers misrepresented the Borrowing Base to induce Western State to finance them." *Id.* at ¶ 18. Western State alleges that Borrowers' misrepresentations began at an unknown date, "but it may have started in 2014 and was discovered in 2019." *Id.* Western State offers an example of these misrepresentations, alleging

that Borrowers issued monthly "Borrowing Base Certificates" to Western State which identified the value of certain collateral in relation to the balance owed by Borrowers to Western State. *Id.* Western State alleges that the Borrowing Base Certificates misrepresented that Western State was or would be sufficiently secured, while the Borrowing Base was actually significantly less than represented. The Borrowing Base Certificates were typically signed by Mr. Wollert and Cosey. *Id.*

In another instance of misrepresentation, Western State alleges that on September 27, 2018, shortly before the promissory notes were executed and in order to induce the loans evidenced by the promissory notes, Mr. Wollert sent an email to Western State wherein Borrowers misrepresented the Borrowing Base and that Western State was or would be over-secured by the collateral. *Id.* In fact, the Borrowing Base was "vastly overstated" and Western State was left "grossly under-secured." *Id.* Additionally, Western State contends that when it routinely inspected the collateral, Borrowers misrepresented the Borrowing Base and failed to disclose that one or more of them had granted a security interest in the same collateral to another party. *Id.*

The Complaint claims Borrowers defaulted on the promissory notes on or about January 24, 2019. *Id.* at ¶ 19. Shortly thereafter, Mr. Wollert purportedly admitted to engaging in the scheme described above. *Id.* After defaulting on the promissory notes, Borrowers also sold certain automobile inventory "out of trust" and retained the proceeds for their own use. *Id.* at ¶ 20.

Western State filed this action on April 19, 2019, asserting five claims for relief. It's first two claims are for breach of the October 2018 promissory notes. The other claims are for fraud, conversion, and civil theft.

On June 10, 2019, Ms. Wollert moved to dismiss the third, fourth[1], and fifth claims for failure to state a claim upon which relief can be granted. Ms. Wollert alleges that the claims for fraud and civil theft are inadequately pled and that the fraud claim is barred by the economic loss rule in any event.

II. Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a claim for relief contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Under Rule 12(b)(6), a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (citation omitted).

A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Mere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

---

[1] In Western State's Response in Opposition to the Motion to Dismiss (ECF No. 10), Western State agreed to withdraw its conversion claim as to Ms. Wollert. Resp. at 1 n.1. Therefore, this Order addresses only Western State's fraud and civil theft claims against Ms. Wollert.

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for fraud, which states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Additionally, in evaluating a motion to dismiss a court may consider the attached exhibits and documents incorporated into the complaint by reference. *Commonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011). Here, Western State attached the two signed promissory notes and the security agreement to the Complaint as exhibits. *See* Compl. Exs. 1-3. These exhibits may be considered in ruling on this Motion to Dismiss.

### III. Analysis

A. The Civil Theft Claim

Under Colorado law, "civil theft is established where (1) [a] defendant knowingly obtained control over plaintiff's property without authorization, or by threat or deception; and (2) with the specific intent to permanently deprive plaintiff of the benefit of the property." *Electrology Lab., Inc. v. Kunze*, 169 F. Supp. 3d 1119, 1161 (D. Colo. 2016). In the Complaint, Western State alleges that the terms of the promissory notes gave Western State the right, upon default, to immediate possession of the inventory collateral and other collateral securing the notes. Compl. ¶ 42. The Complaint goes on to state that, after default, Borrowers sold certain collateral "out of trust" and retained the proceeds for their own use without Western State's authorization. *Id.* at ¶ 42. This satisfies the first element of a civil theft claim. Western State fails, however, to allege the second element of specific intent. Ms. Wollert correctly argues in her

Motion to Dismiss that Western State fails to allege any facts, or even the elemental statement, that Ms. Wollert (or any of the defendants) obtained control over and sold the property with "the specific intent to permanently deprive plaintiff of the benefit of the property." Western State's failure to allege facts pertaining to this element of the claim warrants dismissal of the civil theft claim.

B.  The Fraud Claim[2]

*Rule 9(b) Heightened Pleading*

Ms. Wollert argues that Western State has not satisfied Rule 9(b)'s heightened pleading requirement for fraud claims. To comply with Rule 9(b), a plaintiff must "set forth the time, place and contents of the false representation, the identity of the party making the false statements, and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (internal quotation marks and citation omitted). "More specifically, a plaintiff must: (1) identify the particular individuals with whom he or she dealt; (2) designate the occasion on which the fraudulent statements were made, and by whom; and (3) describe what misstatements and half-truths were expressed and how." *Rosales v. AT & T Info. Sys., Inc.*, 702 F. Supp. 1489, 1493 (D. Colo. 1988) (citation omitted). Under Colorado law, to establish a prima facie case of fraud, a plaintiff must present evidence that (1) the defendant made a false representation of a material fact; (2) that the party making the representation knew it was false; (3) that the party to whom the representation was made did not know of the falsity; (4) that the representation was made with the intent that it be acted upon; and (5) that the representation resulted in damages.

---

[2]Ms. Wollert claims that Western State's fraud claim should really be two separate claims for fraudulent misrepresentation and fraudulent concealment. However, Western State's Complaint only states a claim for common law fraud, therefore that is the only claim this Order addresses.

*Brody v. Bock*, 897 P.2d 769, 775–76 (Colo. 1995) (citing *Kinsey v. Preeson*, 746 P.2d 542, 550 (Colo. 1987)).

Ms. Wollert's primary argument is that Western State's fraud claim "fails to link [her] to any of [the] alleged false representations or other wrongs, improperly lumping her with all the Defendants." Mot. Dismiss at 6, ECF No. 8. The fraud alleged by Western State stems from misrepresentations concerning the collateral securing the loans, or the "Borrowing Base." Western State alleges that "Borrowers engaged in a pattern of misrepresenting the Borrowing Base whereby they represented to [Western State] that the Borrowing Base was sufficient to finance Borrowers and to fully secure the loan(s)." Compl. ¶ 13. Although this allegation might suffice under Rule 8(a), it fails to satisfy the heightened pleading requirement of Rule 9(b), as it lacks information concerning "the occasions on which the fraudulent statements were made and by whom" and fails to "describe what misstatements and half-truths were expressed and how." *Rosales*, 702 F. Supp. at 1493.

Ms. Wollert cites several cases for the proposition that claims attributing acts of fraud to "defendants" collectively without specifying each defendant's specific involvement are impermissible under Rule 9(b). *See, e.g.*, *Conrad v. The Educ. Res. Inst.*, 652 F. Supp. 2d 1172, 1183 (D. Colo. 2009) ("Plaintiff's conclusory allegations that 'Defendant' or 'Defendants' committed fraud is insufficient."); *Jensen v. Am.'s Wholesale Lender*, 425 F. App'x 761, 763 (10th Cir. 2011) ("There are no allegations identifying the culpable defendants or their incriminating misconduct . . . [r]ather, the [plaintiffs] simply speculate that defendants and/or their agents collectively engaged in various instances of wrongdoing . . . ."); *In Amerson v. Chase Home Fin. LLC*, No. 11-CV-01041-WJM-MEH, 2012 WL 1686168, at *1 (D. Colo. May 7, 2012) ("Because allegations of fraud must specifically identify the individual or entity

responsible for making the statements, Plaintiffs' generic description of 'Defendant(s)' is insufficient."), report and recommendation adopted in part, No. 11-CV-01041-WJM-MEH, 2012 WL 2862943 (D. Colo. July 11, 2012). While the cases cited by Ms. Wollert tend to deal with more complex relationships involving a greater number of defendants than in the case at bar, the court in each case emphasizes the importance of specifically identifying which defendant is responsible for the fraudulent acts alleged.

Western State contends that, by defining Ms. Wollert as a "Borrower" in the complaint and tying the fraud allegations to "Borrowers," Ms. Wollert is sufficiently identified as one of the sources of the fraud. Resp. at 6. I am unpersuaded by this argument. Where Western State does allege the fraud with the level of specificity required by Rule 9(b), it is only as to Mr. Wollert's involvement and at all times fails to reference to Ms. Wollert or her role in these acts. For example, Western State alleges that the misrepresentations concerning the value of the Borrowing Base were made in the Borrowing Base Certificates issued monthly to Western State by Borrowers. Compl. ¶ 18. The Complaint details the occasions on which the fraudulent statements were made, what the misstatements and half-truths expressed, and how, but in describing by whom these statements were made, the Complaint plainly states: "the Borrowing Base Certificates were typically signed by Mr. Wollert and Cosey." *Id.* Another example of the Complaint containing specificity only as to Mr. Wollert is the allegation that, in order to induce the loans evidenced by the promissory notes, "*Mr. Wollert* sent an email to [Western State] wherein Borrowers misrepresented the Borrowing Base and that [Western State] was or would be over-secured by the Collateral." *Id.* (emphasis added). Finally, Western State alleges that "when [it] routinely inspected the Collateral, Borrowers misrepresented the Borrowing Base and failed to disclose that one or more of them had granted a security interest in the same Collateral

8

to a third party." *Id.* Yet, immediately after that statement, Western State claims only "*Mr. Wollert* admitted to engaging in the scheme described above." *Id.* ¶ 19 (emphasis added).

Western State has, therefore, failed to sufficiently plead its fraud claim under Rule 9(b).

*Application of the Economic Loss Rule*

Ms. Wollert additionally argues that the economic loss rule bars Western State's claim.[3] Under Colorado's economic loss rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc*., 10 P.3d 1256, 1264 (Colo. 2000). Colorado's economic loss rule was adopted out of concern for imposing both contract and tort liability for the same economic injury. *Id.* at 1262.

The Colorado Supreme Court recently revisited the economic loss rule in *Bermel v. BlueRadios, Inc.*, holding that the economic loss rule does not bar civil theft claims. 440 P.3d 1150, 1159 (Colo. 2019). In a footnote, the *Bermel* court showed concern for the potential of contract law to swallow tort law and suggested that, in determining whether the economic loss rule should bar a claim, courts should differentiate between unintentional and intentional torts. *Id.* at 1155 n.6 ("[T]he economic loss rule generally should not be available to shield intentional tortfeasors from liability for misconduct that happens also to breach a contractual obligation."). Western State has alleged that Borrowers routinely misrepresented the Borrowing Base during Western State's inspections. Compl. ¶ 18. Western State further claims that Borrowers made these representations with the intent of fraudulently inducing Western State to provide Borrowers

---

[3]Ms. Wollert's Motion to Dismiss initially argued that the economic loss rule also barred the civil theft claim. Ms. Wollert acknowledges that under the Colorado Supreme Court's recent holding in *Bermel v. BlueRadios, Inc*., 440 P.3d 1150 (Colo. 2019), the economic loss rule does not bar a statutory civil theft claim.

with financing in October 2018, as evidenced by the promissory notes. *Id.* at ¶¶ 14-15, 18, 35-37. Western State's fraud claim alleges an intentional tort. So, under *Bermel*, the economic loss rule would not bar Western State's fraud claim.

Even if *Bermel* cannot be read to exclude intentional fraud from the scope of the economic loss rule, the rule is not applicable where a plaintiff's tort claim "flow[s] from an independent duty under tort law." *Van Rees v. Unleaded Software, Inc.*, 373 P.3d 603, 607 (Colo. 2016). In *Van Rees v. Unleaded Software, Inc.*, the Colorado Supreme Court noted an "important distinction between failure to perform the contract itself[] and promises that induce a party to enter into a contract in the first place." *Id.* The *Van Rees* court reasoned that where the plaintiff claimed not only that the defendant had breached its obligations under the contract, but also that it wrongfully induced him into entering a contractual relationship knowing that it did not have the capability to perform any of the promised services, the plaintiff alleged a violation of a tort duty that is independent of the contract. *Id.* As a result, the court held that the fraud claim based on representations made before the contractual relationship was not barred by the economic loss rule. *Id.* at 608. Here, Western State asserts that Borrowers' misrepresentations and omissions occurred before Western State provided the financing evidenced in the promissory notes. Compl. ¶¶ 18, 35-37.

Western State has thus alleged the intentional tort of fraud and bases its fraud claim on pre-contractual misrepresentations and omissions. I find the alleged pre-contractual misrepresentations are not fully memorialized in their contracts. As a result, the economic loss rule would not bar Western State's fraud claim, were it viable under Rule 9(b).

IV. Conclusion

Accordingly, Ms. Wollert's Motion to Dismiss (ECF No. 8) is GRANTED. Western State's fraud and civil theft claims are DISMISSED with respect to Ms. Wollert.

Western State has requested leave to amend in the event I find it has not met its burden under Rule 9(b) and/or Rule 8(a). Pursuant to Federal Rule of Civil Procedure 15, a plaintiff may amend its complaint after the defendant has answered only with leave of court. A court should freely give leave to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). Denial of leave to amend under Rule 15(a) is generally only "justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citing *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993)). Finding none of the reasons to deny applicable in this case, Western State is granted leave to amend. It shall have up to and including November 18, 2019, to file an amended complaint based on this Order.

DATED this 4th day of November, 2019.

JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE